UNDER SEAL

FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

SEP - 4 2013

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

September 2012 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | SA CR 13- **SA CR 13-0168** |
| Plaintiff, | |
| v. | **I N D I C T M E N T** |
| | [18 U.S.C. § 1962(d): Racketeer Influenced and Corrupt Organizations Conspiracy; 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii): Distribution of Methamphetamine; 18 U.S.C. § 922(g)(1): Felon in Possession of a Firearm] |
| ISMAEL ESQUIVEL, aka "Lil Bogart," | |
| RALPH BERNAL, aka "Rafa," | |
| GLORIA AGUILAR-VARGAS, aka "Homegirl," | |
| GUILLERMO MAYORAL, aka "Creeper," | |
| JOE CAMPOS, aka "Crazy," | |
| GERARDO CASTRO, aka "Minor," | |
| RAMON ALVAREZ, aka "Paya," | |
| ROBERTO MURIEL, aka "Mono," | |
| DANNY RODRIGUEZ, aka "Big Shotgun," | |
| RAUL GONZALEZ-HERNANDEZ, aka "Butch," | |
| GUSTAVO NUNEZ, aka "Blackie," | |
| MANUEL HERNANDEZ, aka "Smiley," | |
| EDGARDO MORENO, aka "Mugsy," | |

```
 1
 2
 3
 4   FRANCISCO AMAYA,                    )
          aka "Vamps,"                   )
 5   PEDRO TORRES,                       )
          aka "Bugsy,"                   )
 6   GEORGE MARTINEZ,                    )
          aka "Monk,"                    )
 7   JOHN TERRONES,                      )
     MARIO FRANCO,                       )
 8   JACK GLENNING,                      )
     ANTHONY MARUSIC,                    )
 9        aka "Crickett,"                )
     JOSEPH BANDA,                       )
10        aka "Jojo,"                    )
     KIMBERLY SILVA-COX,                 )
11        aka "Smiley,"                  )
     FRED HARPER,                        )
12        aka "Youngster,"               )
     AMBER CANTU,                        )
13   MARCELO PEREZ,                      )
          aka "Stalker,"                 )
14   ALVARO HERNANDEZ,                   )
          aka "Lucky,"                   )
15                                       )
                    Defendants.          )
16   _____ )
```

17   The Grand Jury Charges:

18                   [18 U.S.C. § 1962(d)]

19              <u>INTRODUCTORY ALLEGATIONS</u>

20           <u>THE RACKETEERING ENTERPRISE</u>

21        1.  At all times relevant to this Indictment:

22        Defendants ISMAEL ESQUIVEL, also known as ("aka") "Lil

23   Bogart" ("ESQUIVEL"); RALPH BERNAL, aka "Rafa" ("BERNAL"); GLORIA

24   AGUILAR-VARGAS, aka "Homegirl" ("AGUILAR-VARGAS"); GUILLERMO

25   MAYORAL, aka "Creeper" ("MAYORAL"); JOE CAMPOS, aka "Crazy"

26   ("CAMPOS");  GERARDO CASTRO, aka "Minor" ("CASTRO"); RAMON

27   ALVAREZ, aka "Paya" ("ALVAREZ"); ROBERTO MURIEL, aka "Mono"

28   ("MURIEL"); DANNY RODRIGUEZ, aka "Big Shotgun" ("RODRIGUEZ");

1   RAUL GONZALEZ-HERNANDEZ, aka "Butch" ("R. HERNANDEZ"); GUSTAVO

2   NUNEZ, aka "Blackie" ("NUNEZ"); MANUEL HERNANDEZ, aka "Smiley"

3   ("M. HERNANDEZ"); EDGARDO MORENO, aka "Mugsy" ("MORENO");

4   FRANCISCO AMAYA, aka "Vamps" ("AMAYA"); PEDRO TORRES, aka "Bugsy"

5   ("TORRES"); GEORGE MARTINEZ, aka "Monk" ("MARTINEZ"); JOHN

6   TERRONES ("TERRONES"); MARIO FRANCO ("FRANCO"); JACK GLENNING

7   ("GLENNING"); ANTHONY MARUSIC, aka "Crickett" ("MARUSIC"); JOSEPH

8   BANDA, aka "Jo-Jo" ("BANDA"); KIMBERLY SILVA-COX, aka "Smiley"

9   ("SILVA-COX"); FRED HARPER, aka "Youngster" ("HARPER"); AMBER

10   CANTU ("CANTU"); MARCELO PEREZ, aka "Stalker" ("PEREZ"); ALVARO

11   HERNANDEZ, aka "Lucky" ("A. HERNANDEZ"); (collectively, the

12   "defendants"), and others known and unknown to the Grand Jury,

13   were members and associates of the Orange County Branch of the

14   Mexican Mafia (the "OC Mexican Mafia") headed by co-conspirators

15   Peter Ojeda ("Ojeda") and Albert Vargas ("Vargas"), which engaged

16   in acts involving murder, assaults, extortion, and narcotics

17   trafficking for monetary gain.  The OC Mexican Mafia, including

18   its leadership, membership, and associates, constituted an

19   "enterprise," as defined by Title 18, United States Code, Section

20   1961(4) (hereinafter "the enterprise"), that is, a group of

21   individuals associated in fact.  The enterprise constituted an

22   ongoing organization whose members functioned as a continuing

23   unit for a common purpose of achieving the objectives of the

24   enterprise.  This enterprise was engaged in and its activities

25   affected interstate and foreign commerce.

26   <u>GENERAL BACKGROUND</u>

27      2.  At all times relevant to this Indictment,

28   co-conspirators Ojeda and Vargas were members of the Mexican

1  Mafia, a powerful and violent prison gang which controlled drug
2  distribution and other illegal activities within the California
3  penal system.

4      3.   In addition to exerting its control in the California
5  penal system, the Mexican Mafia also operated on the streets of
6  Southern California by organizing Hispanic street gang members
7  for the purpose of establishing a larger network for the Mexican
8  Mafia's illegal activities.

9      4.   If a gang did not accede to the Mexican Mafia, the
10 Mexican Mafia assaulted or killed the gang's members who were not
11 in custody as well as those members who were incarcerated within
12 the California penal system.  In addition to intimidating
13 individuals within the California penal system by assaulting
14 them, the Mexican Mafia also asserted control and influence over
15 gang members outside the California penal system because gangs
16 did not want their members in the penal system to be assaulted or
17 killed, and because the gang members knew that, if they were
18 incarcerated, they would need the protection of the Mexican Mafia
19 while they served their sentences.

20     5.   As members of the Mexican Mafia, or "carnals,"
21 co-conspirators Ojeda and Vargas maintained the primary
22 leadership role among Hispanic street gang members in Orange
23 County.

24     6.   High-ranking and intermediate-level members of Hispanic
25 criminal street gangs operating in Orange County, such as
26 F-Troop, Delhi, Santa Nita, Orange County Criminals, and Townsend
27 Street, made up the OC Mexican Mafia and assisted co-conspirators
28 Ojeda and Vargas in exerting their influence over Hispanic

4

criminal street gangs and their members.   Co-conspirators Ojeda and Vargas' influence over Orange County Hispanic criminal street gangs and their members extended from the streets of Orange County into the Orange County Jail system and the California correctional system.

7.   Through the OC Mexican Mafia, co-conspirators Ojeda and Vargas required Hispanic criminal street gangs in Orange County to pay money as a "tax" or "tribute" (hereinafter, the "tax") on a regular basis.   The tax consisted of a portion of the proceeds the gangs earned from the various criminal activities engaged in by the membership of the gangs.   By paying the tax, the members of these street gangs were permitted by the OC Mexican Mafia to exert influence over their neighborhoods and territories and to seek protection or assistance from the OC Mexican Mafia if needed.

8.   Through the OC Mexican Mafia, co-conspirators Ojeda and Vargas also disciplined Orange County criminal street gangs and their members who engage in unsanctioned violence or did not pay taxes as required.   The OC Mexican Mafia also disciplined in the same manner any gang member who committed some act of disrespect to the organization, its members, or those protected by it.   This discipline included placing "green lights" on the offending gang or gang member, meaning the gang or gang member would be targeted for physical discipline or assault by members of the OC Mexican Mafia or those doing its bidding, or the gang or gang member would be required to pay a "penalty" tax to the OC Mexican Mafia. The OC Mexican Mafia also disciplined members and associates of its enterprise and other gang members by putting them on a "hard

candy" list, meaning the individual would be targeted for death by any member or associate of the OC Mexican Mafia.

9.   The OC Mexican Mafia exercised control over narcotics dealers in Orange County and elsewhere by taxing them.  By paying the tax, the narcotics dealers were free to sell narcotics without interference from the OC Mexican Mafia.  In addition, if narcotics dealers paid significant amounts of money to the OC Mexican Mafia as taxes, the OC Mexican Mafia aided and abetted these narcotics dealers in their narcotics trafficking activities by helping to collect drug debts owed to the dealers and intervening on behalf of the dealers in any disputes with customers, gang members, or any non-organization member seeking to impose taxes on the dealer.  As with the Hispanic criminal street gangs, if a narcotics dealer failed to pay the taxes demanded by the OC Mexican Mafia, the OC Mexican Mafia would put a "green light" out on the dealer, meaning the dealer would be assaulted and/or forced to cease any narcotics trafficking activities.

10.   The OC Mexican Mafia also controlled the Orange County Jail's Hispanic inmate population by authorizing certain incarcerated inmates to "run" the jail on behalf of the organization, which involved carrying out "green lights" or assaults on inmates targeted by the organization, and collecting taxes from inmates conducting illegal activities inside the jail, such as narcotics trafficking.

11.   The OC Mexican Mafia had an organizational structure with co-conspirators Ojeda and Vargas serving as the leaders of the organization.  Co-conspirators Ojeda and Vargas maintained

their leadership position in the organization and ordered members and associates going against the organization to be placed on the "hard candy" list.  This led to the OC Mexican Mafia's involvement in a number of conspiracies to commit assaults and murders over a number of years, including those described in this Indictment.

12.  Crucial to the function of the OC Mexican Mafia were the girlfriends and wives of incarcerated members and associates. These defendants were directly involved in the affairs of the OC Mexican Mafia and knowingly passed messages between members and associates of the OC Mexican Mafia that helped ensure that the OC Mexican Mafia was able to serve its purposes.  The messages they passed included the "green light" and "hard candy" lists which resulted in individuals being targeted for assaults and murder.

<u>PURPOSES OF THE ENTERPRISE</u>

13.  The purposes of the enterprise included, but were not limited to, the following:

a. Preserving, protecting, and expanding the power of the enterprise through the use of intimidation, violence, threats of violence, assaults, murders, and conspiracies to commit murder.

b. Enriching the members of the enterprise through, among other things, narcotics trafficking and the extortion of narcotics traffickers and others.

c. Promoting and enhancing the enterprise and the activities of its members.

d. Protecting and concealing the activities of the enterprise.

ROLES OF THE DEFENDANTS

14.   The defendants participated in the operation and management of the enterprise.

a. Co-conspirators Peter Ojeda and Albert Vargas were the leaders of the enterprise who directed or delegated the power to direct other members of the enterprise in carrying out unlawful and other activities in furtherance of the conduct of the enterprise's affairs.

b. Under the direction of the leadership of the enterprise, defendants ESQUIVEL, BERNAL, AGUILAR-VARGAS, R. HERNANDEZ, TORRES, GLENNING, MARUSIC, BANDA, SILVA-COX, CANTU, PEREZ, and A. HERNANDEZ were associates of the enterprise who participated in unlawful and other activities in furtherance of the conduct of the enterprise's affairs on the street.  These activities included conspiracies to commit murder, conspiracies to commit serious assaults, and extortion collections on behalf of the OC Mexican Mafia.

c. Under the direction of the leadership of the enterprise, defendants ESQUIVEL, ALVAREZ, MAYORAL, CASTRO, CAMPOS, MURIEL, RODRIGUEZ, R. HERNANDEZ, M. HERNANDEZ, NUNEZ, MORENO, AMAYA, and HARPER were associates who participated in unlawful and other activities in furtherance of the conduct of the enterprise's affairs while in custody within the Orange County Jail ("OCJ") system.  The above defendants furthered the activities of the enterprise by authorizing, on behalf of co-conspirators Ojeda and Vargas, numerous gang members and associates to be put on the "hard candy" and "green light" lists within the OCJ system.  The above defendants were also involved

8

in passing information throughout the hierarchy of the enterprise to update members of the enterprise concerning new targets for assault and/or murder, along with updating the Southern Hispanic gang population about current rules and "green light" targets. They were also involved within the hierarchy of the enterprise by holding leadership positions or shot-caller positions within the enterprise.

d. Under the direction of the leadership of the enterprise, defendants BERNAL, MARTINEZ, TERRONES, and FRANCO were associates who participated in unlawful and other activities in furtherance of the conduct of the enterprise's affairs on the street related to the distribution and trafficking of drugs. The above defendants paid weekly drug taxes to the enterprise for protection and to continue their ongoing illegal drug activities under the umbrella of the enterprise. Defendant MARTINEZ was also involved in collecting and holding some of the drug tax proceeds collected on behalf of the enterprise for co-conspirator Ojeda.

<u>THE MEANS AND METHODS OF THE ENTERPRISE</u>

15. Among the means and methods by which the defendants and their associates conducted and participated in the conduct of the affairs of the OC Mexican Mafia were the following:

a. Members and associates of the enterprise committed, conspired, attempted, and threatened to commit acts of violence, including murders and assaults to protect and expand the enterprise's criminal operations.

9

1        b. To generate income, members and associates of the

2   enterprise trafficked in controlled substances and extorted

3   narcotics traffickers.

4        c. To perpetuate the enterprise, the members of the

5   enterprise concealed from law enforcement the way in which the

6   enterprise conducted its affairs, the locations where enterprise

7   members discussed and conducted the affairs of the enterprise,

8   the locations where enterprise members stored and possessed

9   narcotics, and the locations where enterprise members maintained

10  the proceeds from narcotics trafficking and the extortion of

11  narcotics dealers.

12                       RACKETEERING CONSPIRACY

13       16. Beginning on a date unknown to the Grand Jury, but at

14  least since in or about October 2008, and continuing to a date

15  unknown to the Grand Jury, but at least on or about September 4,

16  2013, in Orange County, within the Central District of

17  California, and elsewhere, defendants ESQUIVEL, BERNAL,

18  AGUILAR-VARGAS, ALVAREZ, MAYORAL, CAMPOS, CASTRO, MURIEL,

19  RODRIGUEZ, R. HERNANDEZ, NUNEZ, M. HERNANDEZ, MORENO, AMAYA,

20  TORRES, MARTINEZ, TERRONES, FRANCO, GLENNING, MARUSIC, BANDA,

21  SILVA-COX, HARPER, CANTU, PEREZ, A. HERNANDEZ, and others known

22  and unknown to the Grand Jury, being persons employed by and

23  associated with the enterprise described in Paragraphs One

24  through Fifteen of this Indictment, that is, the OC Mexican

25  Mafia, which enterprise was engaged in, and the activities of

26  which affected, interstate and foreign commerce, knowingly and

27  intentionally conspired to violate Title 18, United States Code,

28  Section 1962(c), that is, to conduct and participate, directly

and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5).

17.   The pattern of racketeering activity through which defendants ESQUIVEL, BERNAL, AGUILAR-VARGAS, ALVAREZ, MAYORAL, CASTRO, CAMPOS, MURIEL, RODRIGUEZ, R. HERNANDEZ, NUNEZ, M. HERNANDEZ, MORENO, AMAYA, TORRES, MARTINEZ, TERRONES, FRANCO, GLENNING, MARUSIC, BANDA, SILVA-COX, HARPER, CANTU, PEREZ, A. HERNANDEZ, and others known and unknown to the Grand Jury, agreed together and with each other, to conduct the affairs of the enterprise, consisted of multiple acts involving:

a.   Murder, in violation of California Penal Code Sections 182, 187, and 189;

b.   Extortion, in violation of California Penal Code Sections 182, and 518 to 520; and

c.   Narcotics trafficking, in violation of the laws of the United States, including Sections 841(a)(1), 841(b)(1)(B), and 846 of Title 21, United States Code.

Each defendant agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise.

### OVERT ACTS

18.   In furtherance of the conspiracy and to accomplish the objects of the conspiracy, the defendants and their co-conspirators committed the following overt acts, among others, in Orange County, within the Central District of California, and elsewhere:

1    <u>Overt Act No. 1:</u>    On or about October 18, 2008,

2  unindicted co-conspirators G.C. and A.M. participated in a

3  recorded conversation in which they discussed how extra money

4  could be made by collecting from people who skipped bail against

5  defendant GLENNING.

6    <u>Overt Act No. 2:</u>    On or about October 19, 2008,

7  unindicted co-conspirators G.C and A.M. participated in a

8  recorded conversation in which they discussed how defendant

9  GLENNING would contact co-conspirator Ojeda when someone did not

10 pay their bail so that co-conspirator Ojeda could have someone

11 use force to collect bail money for defendant GLENNING.

12   <u>Overt Act No. 3:</u>    On or about November 23, 2008,

13 unindicted co-conspirator A.M. participated in a recorded

14 conversation in which he stated he was able to send a message

15 regarding assaulting an individual to co-conspirator Ojeda

16 through defendant GLENNING.

17   <u>Overt Act No. 4:</u>    On or about December 11, 2008, defendant

18 GLENNING participated in a recorded telephone conversation in

19 which defendant GLENNING stated he was passing messages to co-

20 conspirator Ojeda.

21   <u>Overt Act No. 5:</u>    On or about January 15, 2009, defendant

22 AGUILAR-VARGAS arranged to deposit $600 into co-conspirator

23 Ojeda's prison account.

24   <u>Overt Act No. 6:</u>    On or about January 27, 2009, defendant

25 AGUILAR-VARGAS arranged to deposit $700 into co-conspirator

26 Ojeda's prison account.

27   <u>Overt Act No. 7:</u>    On or about February 20, 2009, defendant

28

AGUILAR-VARGAS arranged to deposit $500 into co-conspirator Ojeda's prison account.

Overt Act No. 8:   On or about March 1, 2010, defendant MURIEL sent a message to members and associates of the OC Mexican Mafia in custody at the OCJ stating that the jail was under the control of co-conspirator Ojeda and that defendant MURIEL was in control of Module M.

Overt Act No. 9:   On or about June 10, 2010, co-conspirator Tyrone Rye sent a current "hard candy" list of subjects targeted for murder to defendant CAMPOS.

Overt Act No. 10:   On or about June 10, 2010, defendant CAMPOS, a shot-caller in the OC Mexican Mafia, awaited the arrival of a current "hard candy" list to use to update associates of the OC Mexican Mafia on those targeted by the enterprise for murder.

Overt Act No. 11:   Beginning in or around January 2011, defendant FRANCO paid approximately $200 a week in tax payments to the OC Mexican Mafia to insure the protection of his drug trafficking activities by the enterprise.

Overt Act No. 12:   Beginning in or around February 2011, defendant R. HERNANDEZ began collecting taxes from the narcotics sales conducted by the Varrio Chico and Varrio Viejo criminal street gangs, and defendant R. HERNANDEZ then passed the money he collected on to co-conspirator Joe Lara, who was a shot-caller for the OC Mexican Mafia.

Overt Act No. 13:   On or about March 2, 2011, defendant

PEREZ collected a $100 tax payment from a confidential informant

("CI #1"), and defendant PEREZ told CI#1 that CI#1 was to deal

directly with PEREZ when making any future tax payments.

Overt Act No. 14:   On or about March 29, 2011, defendant

PEREZ collected a $100 tax payment from CI#1 and then discussed

how much in taxes CI#1 had already paid.

Overt Act No. 15:   On or about April 7, 2011, defendant

PEREZ collected a $130 tax payment from CI#1.

Overt Act No. 16:   On or about May 24, 2011, defendant

TERRONES supplied approximately 15.3 grams of heroin to CI#1.

Overt Act No. 17:   On or about June 21, 2011, defendant

PEREZ collected a $100 tax payment from CI#1, and defendant PEREZ

told CI#1 that the tax payment was ultimately going to co-

conspirator Ojeda.

Overt Act No. 18:   On or about June 9, 2011, defendant

TERRONES supplied approximately 14.8 grams of heroin to CI#1.

Overt Act No. 19:   On or about June 24, 2011, defendant

TERRONES supplied approximately 21.9 grams of heroin to CI#1.

Overt Act No. 20:   On or about June 26, 2011, defendant

MURIEL sent a message to members and associates of the OC Mexican

Mafia in custody at the OCJ in which defendant MURIEL identified

himself and defendant ALVAREZ as running the criminal activities

at the OCJ on behalf of co-conspirator Ojeda; and defendant

MURIEL further sent a message that three gang members were on the

"hard candy" list and were therefore being targeted by the OC

Mexican Mafia for murder.

Overt Act No. 21:   On or about July 7, 2011, defendant

PEREZ collected another $100 tax payment from CI#1.

Overt Act No. 22:   On or about July 13, 2011, defendant AGUILAR-VARGAS possessed several pay/owe sheets in her residence showing money that co-conspirator Navarro had collected on behalf of co-conspirator Ojeda in the form of tax payments from narcotics traffickers on the streets, some of which money defendant AGUILAR-VARGAS gave to defendant MARTINEZ to hold for co-conspirator Ojeda.

Overt Act No. 23:   On or about July 18, 2011, defendant CAMPOS served as the shot-caller for Module K at the Theo Lacy Jail.

Overt Act No. 24:   On or about August 9, 2011, defendant AGUILAR-VARGAS sent two greeting cards containing heroin to co-conspirator Vargas in the Santa Ana jail.

Overt Act No. 25:   On or about August 31, 2011, defendant PEREZ collected a $200 tax payment from CI#1 for the OC Mexican Mafia, and defendant PEREZ told CI#1 that he was collecting tax payments for co-conspirator Ojeda.

Overt Act No. 26:   On or about September 4, 2011, defendant ESQUIVEL visited co-conspirator Ojeda in jail, and defendant ESQUIVEL arranged to deposit $200 into co-conspirator Ojeda's jail account.

Overt Act No. 27:   On or about September 6, 2011, defendant NUNEZ possessed narcotics in the Theo Lacy jail.

Overt Act No. 28:   On or about September 6, 2011, defendant NUNEZ possessed two messages for the members and associates of the OC Mexican Mafia which listed gangs to be "green lighted" by the OC Mexican Mafia.

Overt Act No. 29:   On or about September 6, 2011, defendant

1  NUNEZ served as a shot-caller for the OC Mexican Mafia.

2      Overt Act No. 30:   On or about September 21, 2011,

3  defendants TERRONES and R. HERNANDEZ participated in a recorded

4  telephone conversation in which defendant R. HERNANDEZ stated

5  that either defendant R. HERNANDEZ or defendant ESQUIVEL would

6  call defendant TERRONES to arrange future tax collections.

7      Overt Act No. 31:   On or about September 21, 2011,

8  defendant TERRONES supplied approximately 24.5 grams of heroin to

9  CI#1.

10     Overt Act No. 32:   On or about September 23, 2011,

11 defendant A. HERNANDEZ collected a $150 tax payment from CI#1,

12 and defendant A. HERNANDEZ told CI#1 that he was now the person

13 collecting tax payments on behalf of co-conspirator Ojeda because

14 defendant PEREZ was in custody.

15     Overt Act. No. 33:   On or about September 26, 2011,

16 defendant TERRONES and co-conspirator Holy Lamb ("Lamb")

17 participated in a recorded telephone conversation in which they

18 discussed how defendant R. HERNANDEZ gave defendant TERRONES'

19 phone number to defendant TORRES because defendant TORRES was now

20 in charge of collecting tax payments for defendant ESQUIVEL.

21     Overt Act No. 34:   On or about September 28, 2011,

22 defendants M. HERNANDEZ and TERRONES participated in a recorded

23 telephone conversation in which they discussed how defendant R.

24 HERNANDEZ was arrested and how he had been in charge of

25 collecting tax payments.

26     Overt Act No. 35:   On or about September 28, 2011,

27 defendants TERRONES and TORRES participated in a recorded

28 telephone conversation in which defendant TERRONES explained how

defendant M. HERNANDEZ was arrested and therefore could not take care of collecting tax payments, and defendant TERRONES requested a meeting with defendant TORRES.

Overt Act No. 36:   On or about September 29, 2011, defendant M. HERNANDEZ participated in a recorded telephone call with co-conspirator Lamb in which defendant M. HERNANDEZ told co-conspirator Lamb to pass along a message to have a gang member assaulted on the street.   Defendant M. HERNANDEZ and co-conspirator Lamb also discussed selling narcotics.

Overt Act No. 37:   On or about September 29, 2011, defendant TERRONES supplied approximately 24.3 grams of heroin to CI#1.

Overt Act No. 38:   On or about September 30, 2011, defendant A. HERNANDEZ participated in a recorded telephone conversation with co-conspirator Pedro Hernandez in which defendant A. HERNANDEZ explained that defendants PEREZ and M. HERNANDEZ wanted defendant A. HERNANDEZ to start collecting tax payments.

Overt Act No. 39:   On or about October 3, 2011, defendants TERRONES and TORRES participated in a recorded telephone conversation in which defendant TERRONES stated he was trying to get a hold of defendant ESQUIVEL because defendant TERRONES owed tax payments.

Overt Act No. 40:   On or about October 7, 2011, defendant A. HERNANDEZ collected a $100 tax payment from CI#1.

Overt Act No. 41:   On or about October 12, 2011, defendant A. HERNANDEZ supplied approximately 22.8 grams of methamphetamine to CI#1.

Overt Act No. 42:   On or about October 12, 2011, defendant FRANCO supplied approximately 27.6 grams of methamphetamine to CI#1.

Overt Act No. 43:   On or about October 26, 2011, defendant R. HERNANDEZ sent a message to defendants ESQUIVEL and TORRES to remove two gang members that defendant R. HERNANDEZ had put on the "green light" list.

Overt Act No. 44:   Prior to on or about November 4, 2011, defendants AGUILAR-VARGAS and ESQUIVEL instructed defendant ALVAREZ to order an assault of defendant R. HERNANDEZ.

Overt Act No. 45:   On or about November 4, 2011, associates of the OC Mexican Mafia assaulted defendant R. HERNANDEZ for disrespecting an OC Mexican Mafia member and violating the leadership rules within the enterprise.

Overt Act No. 46:   On or about November 9, 2011, unindicted co-conspirator H.M. collected a tax payment from CI#1 for defendant A. HERNANDEZ.

Overt Act No. 47:   On or about November 9, 2011, defendants TERRONES and ESQUIVEL participated in a recorded telephone conversation in which they discussed the amount of tax payment defendant TERRONES should pay based on defendant TERRONES' narcotics sales, and defendant ESQUIVEL told defendant TERRONES to give the tax payments to defendant BANDA every Friday.

Overt Act No. 48:   On or about November 22, 2011, defendants R. HERNANDEZ and MARUSIC participated in a recorded telephone conversation in which defendant R. HERNANDEZ told defendant MARUSIC to talk to defendant ESQUIVEL to remove defendant R. HERNANDEZ's name from the "hard candy" list.

Defendant R. HERNANDEZ also discussed putting two gang members on
the "green light" list.

Overt Act No. 49:   On or about November 26, 2011,
defendants R. HERNANDEZ and MARUSIC participated in a recorded
telephone conversation in which defendant R. HERNANDEZ discussed
how he wanted to be given control of the jails by defendant
ESQUIVEL, and defendant MARUSIC told defendant R. HERNANDEZ he
would not take no for an answer.

Overt Act No. 50:   On or about November 29, 2011, defendant
CAMPOS, a shot-caller for the OC Mexican Mafia, sent two messages
to members and associates of the OC Mexican Mafia in custody at
the OCJ that consisted of the current "hard candy" and "green
light" lists, as well as a discussion of OC Mexican Mafia
politics.

Overt Act No. 51:   On or about November 29, 2011, co-
conspirator Tyrone Rye sent a letter to members and associates
of the OC Mexican Mafia in custody at the OCJ discussing how
defendant AMAYA passes messages for the OC Mexican Mafia.

Overt Act No. 52:   On or about November 30, 2011,
defendant R. HERNANDEZ participated in a recorded telephone
call with unindicted co-conspirator L.W. in which unindicted
co-conspirator L.W. described how defendant AGUILAR-VARGAS had
threatened unindicted co-conspirator L.W.

Overt Act No. 53:   On or about December 1, 2011,
defendant AMAYA attempted to smuggle methamphetamine into the
Santa Ana Jail for the OC Mexican Mafia.

Overt Act No. 54:   On or about December 1, 2011,
defendant AMAYA possessed a "hard candy" list.

1    <u>Overt Act No. 55:</u>   On or about December 2, 2011 and

2    December 3, 2011, defendants TERRONES and BANDA participated in

3    a series of recorded telephone conversation in which they

4    discussed setting up a meeting so defendant BANDA could pick up

5    tax payments from defendant TERRONES.

6    <u>Overt Act No. 56:</u>   On or about December 4, 2011,

7    defendants MARTINEZ and TERRONES participated in a recorded

8    telephone conversation in which (1) defendant TERRONES

9    discussed being taxed $100 per week; (2) defendant TERRONES

10   stated that defendant ESQUIVEL had threatened defendant

11   TERRONES; and (3) defendant MARTINEZ told defendant TERRONES

12   that the weekly tax payments were too much and informed

13   defendant TERRONES that he was going to talk to defendant

14   ESQUIVEL about the weekly tax payments.

15   <u>Overt Act No. 57:</u>   On or about December 5, 2011,

16   defendant MARTINEZ participated in a recorded telephone

17   conversation in which defendant MARTINEZ discussed OC Mexican

18   Mafia politics in the OCJ.

19   <u>Overt Act No. 58:</u>   On or about December 6, 2011,

20   defendant FRANCO supplied approximately 27.4 grams of

21   methamphetamine to CI#1.

22   <u>Overt Act No. 59:</u>   On or about December 7, 2011,

23   defendants R. HERNANDEZ and MARUSIC participated in a recorded

24   telephone call in which defendant R. HERNANDEZ stated that the

25   Anaheim Vato Locos gang wanted to pay weekly taxes to the OC

26   Mexican Mafia, and defendant R. HERNANDEZ instructed defendant

27   MARUSIC to collect the taxes from the gang weekly.

28   <u>Overt Act No. 60:</u>   On or about December 13, 2011,

defendant MARTINEZ participated in a recorded telephone conversation in which defendant MARTINEZ discussed how an inmate was assaulted for cooperating against the OC Mexican Mafia.

Overt Act No. 61:   On or about December 15, 2011, defendant ALVAREZ received a message from defendant AGUILAR-VARGAS that three inmates had been added to the "hard candy" list to be killed.

Overt Act No. 62:   On or about December 15, 2011, defendant ESQUIVEL ordered unindicted co-conspirator A.V. to be placed in charge of all Southern Hispanic inmates because defendant ALVAREZ had been moved to the Intake/Release Center.

Overt Act No. 63:   On or about December 15, 2011, defendant AGUILAR-VARGAS ordered that unindicted co-conspirator B.G. be killed at the request of co-conspirator Ojeda.

Overt Act No. 64:   On or about December 15, 2011, defendant ALVAREZ possessed "hard candy" and "green light" lists at the OCJ.

Overt Act No. 65:   On or about December 26, 2011, defendant ALVAREZ was a shot-caller for the OC Mexican Mafia and possessed "hard candy" and "green light" lists that had been approved by defendant AGUILAR-VARGAS.

Overt Act No. 66:   On or about December 30, 2011, defendant ALVAREZ ordered that unindicted co-conspirator I.B. be put on the "hard candy" list for mentioning defendant ESQUIVEL's name without permission.

Overt Act No. 67:   On or about December 30, 2011,

1  unindicted co-conspirator O.N. collected tax payments from the

2  Logan Street gang, which he then gave to defendant CANTU.

3      Overt Act No. 68:   On or about December 30, 2011,

4  defendant ALVAREZ authorized unindicted co-conspirator W.P. to

5  stab and kill unindicted co-conspirator I.B.

6      Overt Act No. 69:   On or about January 3, 2012,

7  unindicted co-conspirator W.P. attempted to arrange for

8  narcotics to be sent into the OCJ so that unindicted co-

9  conspirator W.P. could give the narcotics to defendant AMAYA,

10  who would in turn give the narcotics to co-conspirator Ojeda in

11  the Santa Ana jail.

12      Overt Act No. 70:   On or about January 5, 2012, defendant

13  ESQUIVEL placed a "green light" on the Pearl Street gang due to

14  a shooting that unindicted co-conspirator J.D. participated in

15  without the permission of the OC Mexican Mafia.

16      Overt Act No. 71:   On or about January 12, 2012,

17  defendant FRANCO supplied approximately 13.5 grams of

18  methamphetamine to CI#1.

19      Overt Act No. 72:   On or about January 18, 2012, an

20  unindicted co-conspirator sent defendant ALVAREZ a message in

21  which the unindicted co-conspirator apologized to defendant

22  ALVAREZ for losing a message for the members and associates of

23  the OC Mexican Mafia addressed to defendant ALVAREZ, and the

24  unindicted co-conspirator acknowledged that he expected to be

25  punished for losing the message.

26      Overt Act No. 73:   On or about January 19, 2012,

27

28

defendant MARTINEZ participated in a recorded conversation in which defendant MARTINEZ discussed an individual cooperating with law enforcement against the OC Mexican Mafia.

Overt Act No. 74:   On or about January 20, 2012, defendants TERRONES and BANDA participated in a series of recorded telephone conversations in which defendant TERRONES stated he would drive to defendant BANDA's house to leave a tax payment.

Overt Act No. 75:   On or about January 21, 2012, defendant R. HERNANDEZ wrote a letter to an associate of the OC Mexican Mafia in which defendant R. HERNANDEZ stated he was in control of the jail and had co-conspirator Vargas' blessing.

Overt Act No. 76:   On or about January 25, 2012, defendant ALVAREZ sent a message to members and associates of the OC Mexican Mafia in the OCJ putting defendant MURIEL on the "hard candy" list.

Overt Act No. 77:   On or about February 1, 2012, associates of the OC Mexican Mafia assaulted defendant MURIEL in the Theo Lacy Jail.

Overt Act No. 78:   On or about February 2, 2012, defendant MARTINEZ participated in a recorded telephone conversation in which defendant MARTINEZ explained how members and associates of the OC Mexican Mafia would ask defendant MARTINEZ to carry out assaults for them in custody.

Overt Act No. 79:   On or about February 3, 2012, defendant BERNAL collected a $50 tax payment from CI#3.

Overt Act No. 80:   On or about February 3, 2012,

defendants TERRONES and BANDA participated in a recorded telephone conversation in which they agree to meet so defendant TERRONES could give defendant BANDA the tax payments.

Overt Act No. 81:   On or about February 5, 2012, defendant MARTINEZ participated in a recorded telephone conversation in which defendant MARTINEZ discussed stabbing someone in the back at a party because that person owed defendant MARTINEZ money.

Overt Act No. 82:   On or about February 6, 2012, members of the OC Mexican Mafia placed defendant R. HERNANDEZ's name on the "hard candy" list.

Overt Act No. 83:   On or about February 9, 2012, co-conspirator Richard Asher discussed with a confidential informant ("CI#2") his concern that defendant ESQUIVEL was going to put the Orange Varrio Cypress street gang on the "green light" list.

Overt Act No. 84:   On or about February 9, 2012, defendant MARTINEZ supplied co-conspirator Richard Asher with approximately 24.7 grams of heroin.

Overt Act No. 85:   On or about February 17, 2012, defendants TERRONES and BANDA participated in a recorded telephone conversation in which defendant TERRONES stated he had the tax payments for defendant BANDA.

Overt Act No. 86:   In or about March 2012, defendant ESQUIVEL discussed how defendant R. HERNANDEZ was in poor standing within the OC Mexican Mafia.

Overt Act No. 87:   On or about March 1, 2012, defendant

24

BERNAL participated in a recorded conversation with CI#3 in which defendant BERNAL instructed CI#3 to make a tax payment to defendant MARUSIC.

Overt Act No. 88:   On or about March 2, 2012, defendant MARTINEZ participated in a recorded telephone conversation with an unknown male in which they discussed how there was a "green light" on the Delhi gang because of the M. brothers.  They further discussed that it was not fair to put a "green light" on the whole neighborhood when it was only because of the actions of the M. brothers, and they opined that the M. brothers should have to pay a tax to the OC Mexican Mafia in lieu of punishing the whole neighborhood.

Overt Act No. 89:   On or about March 6, 2012, defendant MARUSIC collected a $150 tax payment from CI#3 for defendant BERNAL.

Overt Act No. 90:   On or about March 9, 2012, defendant TORRES met with defendant BERNAL.  During the meeting, defendant TORRES explained to defendant BERNAL how some gangs in Santa Ana were not paying taxes.  Defendant TORRES stated he would go to talk to the gangs about members who were not paying their taxes.  Defendant BERNAL directed defendant TORRES to collect between $500-1000 dollars from unindicted co-conspirator M.E. from the Delhi gang due to a shooting by unindicted co-conspirator M.E. that occurred without the OC Mexican Mafia's permission.

Overt Act No. 91:   On or about March 9, 2012, defendant BERNAL supplied approximately 5.3 grams of methamphetamine to CI#3.

1   <u>Overt Act No. 92:</u>   On or about March 10, 2012, defendants
2   TERRONES and BANDA participated in a recorded telephone
3   conversation in which they discussed defendant TERRONES giving
4   defendant BANDA the tax payments.

5   <u>Overt Act No. 93:</u>   On or about March 14, 2012, defendant
6   BERNAL participated in a recorded conversation with CI#2 in
7   which they discussed defendant BERNAL selling an ounce of
8   methamphetamine to CI#2.   Defendant BERNAL and CI#2 further
9   discussed the narcotics that defendant MARTINEZ sells, and
10  defendant BERNAL and CI#2 also discussed gangs that were on and
11  off the "green light" list.

12  <u>Overt Act No. 94:</u>   On or about March 14, 2012, defendant
13  BERNAL supplied approximately 25.5 grams of heroin to CI#2.

14  <u>Overt Act No. 95:</u>   On or about March 14, 2012, defendants
15  ESQUIVEL and BERNAL participated in a recorded conversation
16  with CI#2 in which defendant ESQUIVEL discussed messages from
17  defendant R. HERNANDEZ and how defendant R. HERNANDEZ had been
18  assaulted because he was talking about co-conspirators Vargas
19  and Ojeda without permission.   Defendant ESQUIVEL further
20  discussed how defendant MURIEL had been assaulted in jail and
21  defendant MURIEL had a position of leadership, but had been
22  talking disrespectfully about defendant ESQUIVEL.   Defendant
23  ESQUIVEL also discussed how he had drugs to send into the jail.

24  <u>Overt Act No. 96:</u>   On or about March 15, 2012, defendant
25  MARTINEZ participated in a recorded telephone conversation with
26  unindicted co-conspirator R.M., who was in custody.   Defendant
27  MARTINEZ told unindicted co-conspirator R.M. to tell the shot-
28  callers that unindicted co-conspirator R.M. was schooled by

1 │ defendant MARTINEZ and therefore should not be messed with.

2 │ Defendant MARTINEZ further stated that defendant MARTINEZ would

3 │ try to write a letter to unindicted co-conspirator R.M. to

4 │ further explain their connection so unindicted co-conspirator

5 │ R.M. would not be messed with in jail.

6 │    Overt Act No. 97:   On or about April 1, 2012,

7 │ unindicted co-conspirator J.C. participated in a recorded

8 │ conversation with CI#2 in which she discussed defendant

9 │ ESQUIVEL and co-conspirator Vargas disrespectfully.

10 │    Overt Act No. 98:   On or about April 2, 2012, defendant

11 │ ESQUIVEL participated in a recorded jail visit with co-

12 │ conspirator Vargas, and defendant ESQUIVEL discussed how

13 │ unindicted co-conspirator J.C. had been killed in Mexico.

14 │    Overt Act No. 99:   On or about April 3, 2012, defendants

15 │ BERNAL and ESQUIVEL participated in a recorded meeting with

16 │ CI#2 in which defendant ESQUIVEL stated that he had visited co-

17 │ conspirator Vargas in jail and defendant ESQUIVEL discussed how

18 │ he passes messages to co-conspirator Vargas in jail.

19 │ Defendants ESQUIVEL and BERNAL further discussed how unindicted

20 │ co-conspirator J.C. was killed in Mexico by unindicted co-

21 │ conspirator R.G.  Defendants ESQUIVEL and BERNAL also discussed

22 │ taxes and removing people from the "green light" and "hard

23 │ candy" lists.  Finally, defendant ESQUIVEL discussed defendant

24 │ MARTINEZ selling narcotics and how co-conspirator Ojeda was

25 │ upset at defendant MARTINEZ for buying a new bike.

26 │    Overt Act No. 100:  Prior to on or about April 4, 2012,

27 │ members of the OC Mexican Mafia placed the Barrio Small Town

28 │ gang on the "green light" list.

Overt Act No. 101:  On or about April 4, 2012, associates of the OC Mexican Mafia assaulted unindicted co-conspirator J.N., who was a member of the Barrio Small Town gang, at the Theo Lacy Jail.

Overt Act No. 102:  On or about April 12, 2012, unindicted co-conspirator R.G. participated in a recorded telephone conversation with CI#2 in which unindicted co-conspirator R.G. stated that unindicted co-conspirator J.C. was killed in Mexico because she was talking disrespectfully about co-conspirator Ojeda.

Overt Act No. 103:  On or about April 12, 2012, defendant ESQUIVEL put unindicted co-conspirator H.A. on the "hard candy" list.

Overt Act No. 104:  On or about April 13, 2012, associates of the OC Mexican Mafia assaulted unindicted co-conspirator H.A. at the Theo Lacy jail.

Overt Act No. 105:  On or about April 13, 2012, defendants TERRONES and BANDA participated in a recorded telephone conversation in which defendant TERRONES stated that he had the tax payment for defendant BANDA.

Overt Act No. 106:  On or about April 16, 2012, defendant CANTU participated in a recorded telephone conversation with unindicted co-conspirator H.A. in which they discussed defendant CANTU helping unindicted co-conspirator H.A. make tax payments to get his name off the "hard candy" list.

Overt Act No. 107:  Prior to on or about April 19, 2012,

members of the OC Mexican Mafia placed the Delhi street gang on
the "green light" list due to a shooting that occurred in that
gang's neighborhood without the OC Mexican Mafia's permission.

    <u>Overt Act No. 108:</u>  On or about April 19, 2012, defendants
TERRONES and BANDA participated in a recorded telephone
conversation in which defendant BANDA ordered narcotics from
defendant TERRONES.  During this call, defendant TERRONES
stated that he would have his weekly tax payment ready for
defendant BANDA, and defendant TERRONES asked defendant BANDA
if the Delhi gang was supposed to be assaulted daily or weekly
as defendant TERRONES was getting calls from Delhi inmates who
were being assaulted daily.  In response, defendant BANDA said
the assaults were supposed to occur weekly, and defendant
TERRONES stated he would speak with defendant BERNAL about the
situation.

    <u>Overt Act No. 109:</u>  On or about April 23, 2012, defendant
GLENNING participated in a recorded call with unindicted co-
conspirator D.M. in which defendant GLENNING stated he was
collecting money and had to threaten some people.

    <u>Overt Act No. 110:</u>  On or about April 27, 2012, defendants
TERRONES and BANDA participated in a recorded telephone
conversation in which defendant TERRONES stated he sent the tax
payments for defendant BANDA and defendant ESQUIVEL.  Defendant
BANDA acknowledged this and stated he received the tax
payments.

    <u>Overt Act No. 111:</u>  On or about April 29, 2012, defendant
CANTU participated in a recorded telephone conversation with
unindicted co-conspirator H.A. in which unindicted co-

1   conspirator H.A. told defendant CANTU he had a 47-inch

2   television set that he could use to pay off $1,000 he owed to

3   defendant ESQUIVEL.

4       Overt Act No. 112:  On or about May 8, 2012, defendant

5   BERNAL collected a $400 tax payment from CI#3.

6       Overt Act No. 113:  On or about May 10, 2012, defendant

7   BERNAL collected a $1,800 tax payment from CI#3.

8       Overt Act No. 114:  On or about May 11, 2012, defendant

9   BERNAL supplied approximately 10.5 grams of heroin to CI#3.

10      Overt Act No. 115:  On or about May 17, 2012, defendants

11  FRANCO and BERNAL participated in a recorded telephone

12  conversation in which defendant BERNAL asked whether defendant

13  ESQUIVEL had stopped by to collect the tax payment from

14  defendant FRANCO.

15      Overt Act No. 116:  On or about May 25, 2012, defendant

16  GLENNING participated in a recorded telephone conversation with

17  unindicted co-conspirator N.A. in which defendant GLENNING

18  stated that he was threatening an individual to pay money owed

19  to defendant GLENNING.

20      Overt Act No. 117:  On or about May 30, 2012, defendant

21  TERRONES supplied approximately 17 grams of heroin to CI#1.

22      Overt Act No. 118:  On or about June 4, 2012, defendant

23  MARTINEZ participated in a recorded telephone conversation with

24  co-conspirator Desiree Trejo in which they discuss how the

25  Delhi gang was on the "green light" list.

26      Overt Act No. 119:  On or about June 7, 2012, defendant

27  GLENNING participated in a recorded call with unindicted co-

28  conspirator N.A. in which defendant GLENNING discussed the

                                  30

possible location of a gang member who testified against the OC Mexican Mafia in a murder trial.

Overt Act No. 120:  On or about June 12, 2012, defendant GLENNING participated in a recorded jail visit with co-conspirator Joe Lara in which defendant GLENNING discussed how he needed to contact defendant ESQUIVEL.  Defendant GLENNING further discussed how he passed messages to help co-conspirator Ojeda.

Overt Act No. 121:  Prior to June 26, 2012, members of the OC Mexican Mafia placed the West Side La Habra gang on the "green light" list due to not paying taxes to defendant ESQUIVEL.

Overt Act No. 122:  On or about June 26, 2012, associates of the OC Mexican Mafia assaulted unindicted co-conspirator P.C., a member of the West Side La Habra gang, at the Theo Lacy jail.

Overt Act No. 123:  On or about June 27, 2012, defendant BERNAL supplied approximately 25 grams of heroin to CI#3.

Overt Act No. 124:  Prior to on or about June 27, 2012, members of the OC Mexican Mafia placed the Boys From the Hood gang on the "green light" list and informed the members of that gang that they needed to pay $2,500 to have the gang taken off the "green light" list.

Overt Act No. 125:  On or about June 27, 2012, associates of the OC Mexican Mafia assaulted unindicted co-conspirator J.R., a member of the Boys From the Hood gang, while he was in custody.

Overt Act No. 126:  On or about July 7, 2012, defendant

1  CASTRO possessed a message for members and associates of the OC
2  Mexican Mafia that described the rules to be followed by
3  members and associates of the OC Mexican Mafia, what was to
4  happen to drugs brought into the jail, and discipline action
5  and assaults that would occur as a result of non-compliance
6  with the rules established by the OC Mexican Mafia.

7      Overt Act No. 127:  On or about July 12, 2012, defendant
8  BERNAL supplied approximately 13.1 grams of methamphetamine to
9  CI#3.

10      Overt Act No. 128:  On or about July 27, 2012, defendant
11  BERNAL supplied approximately 26.7 grams of methamphetamine to
12  CI #2.

13      Overt Act No. 129:  On or about August 9, 2012, defendant
14  GLENNING participated in a recorded telephone conversation with
15  CI#3 in which defendant GLENNING stated he would provide CI#3
16  the names and personal identifying information of two
17  individuals who would not pay back their bail money to
18  defendant GLENNING.

19      Overt Act No. 130:  On or about August 12, 2012,
20  defendants BERNAL and ESQUIVEL participated in a recorded
21  telephone conversation in which defendant ESQUIVEL told
22  defendant BERNAL to go to defendant FRANCO's residence.  During
23  this call, defendant BERNAL asked if defendant ESQUIVEL wanted
24  the same narcotics, and defendant ESQUIVEL confirmed that he
25  did.

26      Overt Act No. 131:  On or about August 12, 2012 defendants
27
28

1  BERNAL and FRANCO participated in a recorded telephone
2  conversation in which defendant BERNAL ordered one unit of
3  methamphetamine from defendant FRANCO for defendant ESQUIVEL.

4      Overt Act No. 132: On or about August 14, 2012, defendant
5  MAYORAL gave a message to CI#2 for the members and associates
6  of the OC Mexican Mafia that stated that defendant MAYORAL was
7  the main shot-caller for the OC Mexican Mafia. Defendant
8  MAYORAL's message also included the "green light" and "hard
9  candy" lists.

10     Overt Act No. 133: On or about August 30, 2012, defendant
11 MAYORAL told CI#2 the names of two subjects who were being
12 targeted for murder by the OC Mexican Mafia.

13     Overt Act No. 134: On or about September 3, 2012,
14 associates with the OC Mexican Mafia assaulted unindicted co-
15 conspirator J.A. at the Theo Lacy jail because he lost
16 narcotics in the jail and owed money to defendant BERNAL.

17     Overt Act No. 135: On or about September 20, 2012,
18 defendant MAYORAL participated in a recorded telephone
19 conversation with defendant BERNAL in which they discussed
20 authorizing a "green light" on the West Side Myrtle gang.

21     Overt Act No. 136: On or about September 21, 2012,
22 defendant MAYORAL gave CI#2 messages for members and associates
23 of the OC Mexican Mafia which listed a roll-call of all the
24 Southern Hispanics inmates housed in Module P at the Theo Lacy
25 Jail and also contained a "hard candy" list.

26     Overt Act No. 137: Prior to on or about October 1, 2012,
27 defendant ESQUIVEL placed the La Fabrica gang on the "green
28 light" list.

1   <u>Overt Act No. 138:</u>  On or about October 1, 2012,
2   associates of the OC Mexican Mafia assaulted unindicted co-
3   conspirator G.H., a member of the La Fabrica gang, in jail.

4   <u>Overt Act No. 139:</u>  Prior to on or about October 2, 2012,
5   defendants ALVAREZ and CASTRO identified unindicted co-
6   conspirator A.M. as an inmate who was cooperating in another
7   inmate's murder trial.

8   <u>Overt Act No. 140:</u>  On or about October 2, 2012,
9   associates of the OC Mexican Mafia assaulted unindicted co-
10  conspirator A.M. in the Theo Lacy jail.

11  <u>Overt Act No. 141:</u>  On or about October 2, 2012, defendant
12  CASTRO wrote a message to members and associates of the OC
13  Mexican Mafia which discussed how the ES Buena Park gang was
14  being added to the "green light" list.

15  <u>Overt Act No. 142:</u>  On or about October 12, 2012,
16  defendant MAYORAL gave messages to CI#2 from defendant CASTRO
17  for members and associates of the OC Mexican Mafia that stated
18  certain inmates had a pass from being assaulted and further
19  described where to send narcotics that came into the OCJ.

20  <u>Overt Act No. 143:</u>  On or about October 12, 2012,
21  defendant RODRIGUEZ wrote a message for member and associates
22  of the OC Mexican Mafia that discussed whether the ES Buena
23  Park and West Myrtle Street gangs were on the "green light"
24  list.

25  <u>Overt Act No. 144:</u>  On or about October 12, 2012,
26  defendant ESQUIVEL collected $2,500 from unindicted co-
27  conspirator R.V. to have his name removed from the "hard candy"
28  list.

Overt Act No. 145: On or about October 12, 2012, defendant ESQUIVEL participated in a conversation with CI#2 in which defendant ESQUIVEL stated that the Boys From the Hood gang was on the "green light" list because the gang's members were putting out false information about defendant ESQUIVEL. Defendant ESQUIVEL added that members of this gang would have to pay $2,500 to be removed from the "green light" list.

Overt Act No. 146: On or about October 19, 2012, defendant MORENO brought several messages from Corcoran State Prison to Chino State Prison to pass to the leadership of the Mexican Mafia. These messages included orders to kill and assault inmates and gang members, and they included a written message that was seized from defendant MORENO by law enforcement.

Overt Act No. 147: Prior to on or about October 20, 2012, defendant RODRIGUEZ, a shot-caller for the OC Mexican Mafia, ordered that unindicted co-conspirator A.D. be assaulted.

Overt Act No. 148: On or about October 20, 2012, associates of the OC Mexican Mafia assaulted unindicted co-conspirator A.D. based on defendant RODRIGUEZ's orders.

Overt Act No. 149: Prior to on or about October 26, 2012, defendants AGUILAR-VARGAS and ESQUIVEL ordered that unindicted co-conspirator J.R. be killed for not forwarding tax payments to co-conspirator Ojeda.

Overt Act No. 150: On or about October 26, 2012, associates of the OC Mexican Mafia assaulted unindicted co-conspirator J.R. at the Theo Lacy jail.

Overt Act No. 151: On or about November 6, 2012,

1  defendant ESQUIVEL ordered defendant AMAYA to write the current

2  "hard candy" list.

3      Overt Act No. 152:  On or about November 6, 2012,

4  defendant AMAYA wrote a message containing the "hard candy"

5  list for the members and associates of the OC Mexican Mafia in

6  federal custody.

7      Overt Act No. 153:  On or about November 6, 2012,

8  defendant ESQUIVEL put unindicted co-conspirator D.O. on the

9  "hard candy" list for being an associate of a separate faction

10  of the Mexican Mafia.

11      Overt Act No. 154:  On or about November 8, 2012,

12  defendant CASTRO wrote a message to unindicted co-conspirator

13  A.T. confirming that defendant MORENO lost an important message

14  for members and associates of the OC Mexican Mafia.

15      Overt Act No. 155:  Prior to on or about November 27,

16  2012, defendants ESQUIVEL and BERNAL purchased methamphetamine

17  from co-conspirator Juan Fernandez, who also paid taxes to

18  defendants ESQUIVEL and BERNAL.

19      Overt Act No. 156:  On or about November 28, 2012,

20  defendant ESQUIVEL put co-conspirator Richard Longoria on the

21  "hard candy" list for collecting taxes and not giving the taxes

22  to defendants ESQUIVEL or AGUILAR-VARGAS.

23      Overt Act No. 157:  On or about November 29, 2012,

24  defendant ESQUIVEL participated in a conversation with CI#2 in

25  which defendant ESQUIVEL discussed ordering unindicted co-

26  conspirator R.G. to commit a murder in Mexico for the benefit

27  of the OC Mexican Mafia.

28      Overt Act No. 158:  Prior to December 6, 2012, defendant

1  ESQUIVEL placed the West Side La Habra gang on the "green

2  light" list because the gang's members failed to pay taxes for

3  several months.

4       Overt Act No. 159:   On or about December 31, 2012,

5  defendants HARPER and SILVA-COX participated in a recorded

6  telephone conversation in which defendant SILVA-COX stated she

7  went to defendant BERNAL's house on behalf of defendant HARPER.

8  Defendant SILVA-COX also stated that the card soaked in

9  methamphetamine was not ready yet.

10      Overt Act No. 160:   On or about January 3, 2013, defendant

11 SILVA-COX attempted to send a greeting card soaked in

12 methamphetamine to defendant HARPER, who was in the OCJ.

13      Overt Act No. 161:   On or about January 7, 2013, defendant

14 CASTRO possessed "green light" and "hard candy" lists in his

15 jail cell.

16      Overt Act No. 162:   On or about January 7, 2013, an

17 unindicted co-conspirator sent a message to defendant CASTRO

18 asking defendant CASTRO to help arrange for the unindicted co-

19 conspirator to make payments to remove the unindicted co-

20 conspirator's name from the "green light" list.

21      Overt Act No. 163:   On or about January 7, 2013, defendant

22 SILVA-COX participated in a recorded telephone conversation in

23 which she discussed how she kept sending cards soaked in

24 methamphetamine to the OCJ and the cards keep getting

25 confiscated.

26      Overt Act No. 164:   On or about January 7, 2013, defendant

27

28

SILVA-COX participated in a recorded telephone conversation in which defendant SILVA-COX discussed how she met with an individual who could sell her $500 worth of narcotics.

Overt Act No. 165: On or about January 8, 2013, defendants SILVA-COX and HARPER and an unindicted co-conspirator participated in a recorded telephone conversation in which defendant HARPER stated that he had received a card soaked in methamphetamine in jail from defendant SILVA-COX. Defendants SILVA-COX and HARPER and an unindicted co-conspirator further discussed an individual who was to be assaulted for giving information to the police.

Overt Act No. 166: On or about January 9, 2013, defendants SILVA-COX and HARPER and an unindicted co-conspirator participated in a recorded telephone conversation in which the unindicted co-conspirator stated that two gang members had been added to the "green light" list.

Overt Act No. 167: On or about January 20, 2013, defendant SILVA-COX participated in a recorded telephone conversation in which she discussed narcotics trafficking.

Overt Act No. 168: On or about January 20, 2013, defendants SILVA-COX and HARPER participated in a recorded telephone conversation in which they discuss SILVA-COX buying narcotics and making money.

Overt Act No. 169: On or about January 24, 2013, defendant SILVA-COX attempted to bring approximately 30.9 grams
//
//

of heroin, 17.4 grams of methamphetamine, and .2 grams of cocaine into the OCJ that were meant to go to defendant AGUILAR-VARGAS.

    All in violation of Title 18, United States Code, Section 1962(d).

COUNT TWO

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii)]

On or about October 12, 2011, in Orange County, within the Central District of California, defendant ALVARO HERNANDEZ knowingly and intentionally distributed at least five grams, namely, approximately 22.8 grams, of methamphetamine, a schedule II controlled substance.

40

COUNT THREE

[18 U.S.C. § 922(g)(1)]

On or about April 13, 2011, in Orange County, within the Central District of California, defendant MARCELO PEREZ, also known as ("aka") "Stalker" ("PEREZ"), knowingly possessed a firearm, namely, a Ruger, 9mm caliber pistol, model P95DC, bearing serial number 315-45361, in and affecting interstate and foreign commerce. Such possession occurred after defendant PEREZ had been convicted of at least one of the following felony offenses punishable by a term of imprisonment exceeding one year, namely:  (1) Assault with a Firearm on a Person, in violation of Section 245(a)(2) of the California Penal Code, in the Superior Court of the State of California, Orange County, Case No. 01CF3215, on or about June 11, 2002; (2) Evading a

1   Peace Officer, in violation of Section 2800.2 of the California

2   Vehicle Code, in the Superior Court of the State of California,

3   Kern County, Case No. BF107607A, on or about October 20, 2004.

4

5

6                          A TRUE BILL

7

8                          _____/S/_____

9                          Foreperson

10  ANDRÉ BIROTTE JR.
    United States Attorney

11

12

13  ROBERT E. DUGDALE
    Assistant United States Attorney

14  Chief, Criminal Division

15  DENNISE D. WILLETT
    Assistant United States Attorney

16  Chief, Santa Ana Branch Office

17  JOSEPH T. MCNALLY
    Assistant United States Attorney

18  Deputy Chief, Santa Ana Branch Office

19  AMANDA N. LISKAMM
    Assistant United States Attorney

20

21

22

23

24

25

26

27

28

                          42